## The City of Wilkes-Barre *v.* E. H. Chase, Appellant.

*Landlord and tenant—Public officers—Municipal control as to selection of office by receiver of taxes.*

The city of Wilkes-Barre is under no legal obligation to furnish the receiver of taxes with an office, and the selection of a location for his office must be approved by councils, but when councils instead of confining themselves to their legitimate sphere of action, measured by such approval, undertake to make an original selection giving the receiver no primary choice, and directing him to occupy quarters in the city hall, the occupancy of such quarters by the receiver, in obedience to such directions, does not establish either an express or implied contract on the part of the receiver to pay rent, nor does it show the relation of landlord and tenant.

Argued Jan. 12, 1898. Appeal, No. 38, Jan. T., 1898, by defendant, from judgment of C. P. Luzerne Co., Dec. T., 1897, No. 437, in favor of plaintiff on case stated. Before RICE, P. J., WICKHAM, BEAVER, ORLADY, SMITH and PORTER, JJ. Reversed.

Case stated. Before SCHUYLER, P. J., of the 3d judicial district, specially presiding.

It appears from the case stated that the receiver of taxes of the city of Wilkes-Barre under the Act of April 2, 1872, P. L. 740, must have his office in such place in said city as may be approved by the council of said city of Wilkes-Barre. The city would not approve of any other place for the defendant to keep his office other than an office in the city building, which he moved into subsequent to his election in 1895.

On March 10, 1896, the council of the city of Wilkes-Barre passed a resolution " that an annual rental of three hundred dollars be charged to the receiver of taxes for the use of the offices occupied by him in the city hall, said rental to be paid quarterly, and to include heating and lighting of said offices." No rent was paid by the defendant and the plaintiff claimed rent from April 1, 1896 to April 1, 1897, amounting to $300.

The court below entered judgment in favor of plaintiff for $300 with interest from April 1, 1897. Defendant appealed.

*Error assigned* among others was entry of judgment for plaintiff.

*H. W. Palmer*, for appellant.—If the original design had been to charge rental for the rooms prepared for the receiver, then the city authorities would not have the power to build them: Bates v. Bassett, 60 Vermont, 530.

The receiver was allowed to take possession without a lease, and to occupy a year before any claim was made for rent. He took possession of this office under directions from the city, they having stated that they would approve of no other place. It is the custom of the city to provide office room free of charge to public officials without express authority.

The motive of requiring a receiver of taxes to occupy an office in the city hall was one of convenience to the public, and he having occupied it under dictation is under no obligation for rent.

*William S. McLean*, for appellee.—When a city erects a building having for its primary object municipal uses, it may fit up and rent such parts of the same not used purely and exclusively for municipal purposes: Bates v. Bassett, 60 Vt. 530 ; Spaulding v. Lovell, 40 Mass. 71; Tiedeman on Mun. Corp. sec. 210 ; Beach on Pub. Corp. sec. 646 W.

It is conceded that the city was under no legal obligation to provide an office for the receiver of taxes: Gilchrist v. City, 5 Kulp, 289.

Opinion by Wickham, J., May 17, 1898 :

By section 29 of the Act of May 4, 1871, P. L. 539, incorporating the city of Wilkes-Barre, the receiver of taxes was required to maintain his office in the fifth ward in said city. This part of the act was repealed, however, by the supplemental Act of April 2, 1872, P. L. 740, which provides that the receiver "may have his office in such place as may be approved by the council." In construing these acts, it was held by the present president judge of this court, in Gilchrist v. City, 5 Kulp, 289, that the city is under no legal obligation to furnish the receiver with an office, or to repay him for his expenditures for rent, light, and heat.

It appears, from the case stated, that the council, instead of confining themselves to the sphere of action prescribed by the act of 1872, that is, the approving or disapproving of the place

selected by the receiver, undertook to make the original selection for themselves, giving him no primary choice or nomina-. tion in the matter. They decided, in advance, that they would approve of no office save the one which they had prepared for his occupancy in the new city building. Concededly, it would have been useless for him to have named any other place, and asked the council to consider it.

Under this somewhat peculiar form of duress, the receiver moved into and occupied the suite of rooms set apart for him. Later, a resolution was passed, by the council, whereof, so far as the case stated shows, he had no notice or knowledge, requiring him to pay $300 per annum for rent. There is nothing on the record to show that he ever assented or agreed to pay this, or any other sum, or that he was given to understand, until after the alleged rent had accrued, that there was any intention to hold him liable therefor. He was, in a manner, coerced by an undue exercise of authority, on the part of the council, to occupy the offices in the city building.

Had they permitted him to name some other place, obtainable for perhaps one half the rent sought to be collected, he might, after a conference, have been able to satisfy them that such place would have been reasonably suitable. But, they prejudged and predecided the matter, determining, beforehand, not to hearken to his wishes, or to consider at all any other place than the rooms in the city building. Likely enough, the result was to promote the convenience of the public, but the officer has legal rights which cannot arbitrarily be disregarded. No doubt, too, the rent, considering the quarters given him, is reasonable enough, but for that matter he might, if the plaintiff's contention is correct, be compelled to occupy still more pretentious and costly apartments for which $1,000 a year might not be deemed unreasonable. The decision of this case does not turn on the reasonableness or unreasonableness of the rent sued for. The action is for use and occupation and cannot be sustained, unless the plaintiff establishes an express or implied contract, on the part of the defendant, to pay. The relation of landlord and tenant must be shown to have existed: 27 Am. & Eng. Ency. of Law, 908; Pott v. Lesher, 1 Yeates, 576; Brolasky v. Ferguson, 48 Pa. 434. "Although the law will imply a contract to pay rent from the mere fact of occu-

pation, yet this action lies only where the relation of landlord and tenant subsists between the parties, founded on agreement express or implied : " Taylor's Landlord and Tenant, sec. 636.

The difficulty with the plaintiff's case is, that the necessary inference from the facts agreed on, shows that the city had no contract with defendant. The whole matter was unilateral. The offices were arranged and fitted up by the city, at its own instance and to serve its own ends, no doubt very proper ones, without any request on the part of the tax receiver, who was then, nolens volens, required to occupy them. Nothing was said or intimated to him about paying rent, and looking at all the circumstances, so far as they are revealed by the case stated, outside of which we cannot go, the plaintiff's claim is not sustained by either an express or implied agreement. This being the case, it is unnecessary to consider and decide the question of ultra vires, raised at the argument.

The judgment of the court below, on the case stated, is reversed and judgment entered in favor of defendant.